IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MUTUAL BENEFIT INSURANCE COMPANY, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | Civil Action No. RDB-21-178 |
| | * |
| THOMAS G. NATALE, JR. | * |
| Defendant. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On May 25, 2019, the Defendant Thomas G. Natale, Jr. ("Natale" or "Defendant") was operating his All-Terrain Vehicle ("ATV") on U.S. Route 52 in West Virginia. He was involved in a vehicular accident when an individual named Eric Perkins operating a Chevrolet Equinox failed to yield the right of way and collided with Natale's ATV. Perkins had a motor vehicle insurance policy with per-person liability limits of $25,000. This case arises out of Natale's claim for uninsured motorist benefits under two personal automobile policies issued by the Plaintiff Mutual Benefit Insurance Company ("Mutual Benefit") to Natale individually and to his parents, Thomas Natale and Dorothy Natale, with whom he resides. Pursuant to Natale's request, Mutual Benefit consented to Natale's acceptance of the $25,000 policy limits for personal insurance from Perkins' insurance carrier. Mutual Benefit reserved its right to deny uninsured motorist benefits to Natale.

Accordingly, Mutual Benefit brought this Declaratory Judgment action against Defendant Natale pursuant to 28 U.S.C. § 2201 to determine its liability under the two policies

1

issued to him and his parents.[1]  (ECF No. 1.)  The Complaint asks this Court to resolve an insurance coverage dispute, *i.e.*, whether Natale's claims for uninsured motorist coverage and personal-injury-protection coverage under the two relevant policies are precluded by identical exclusions applicable to "motor vehicles" owned by Natale but not insured by the policies. Currently pending are the parties' cross-Motions for Summary Judgment.  (ECF Nos. 18, 21.) The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, Mutual Benefit's Motion for Summary Judgment (ECF No. 18) is GRANTED, and Defendant Natale's Cross Motion for Summary Judgment (ECF No. 21) is DENIED.  As a matter of law, Natale's ATV was not insured under the Mutual Benefit policies in question.  His claims are excluded by the "owned-but-not-insured" exclusion in both policies.

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).  When both parties file motions for summary judgment, as here, the Court applies the same standard of review to both motions, with this Court considering "each motion separately on its own merits to determine whether either [side] deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003), *cert. denied*, 540 U.S. 822 (2003); *see also*

---

[1] This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the dispute is between citizens of different states and the amount in controversy exceeds $75,000.  Mutual Benefit is a citizen of Pennsylvania. (ECF No. 1 ¶ 4.)  Natale is a citizen of Maryland.  (*Id.* ¶ 5.)

*havePower, LLC v. Gen. Elec. Co.*, 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2720 (3d ed. 1983)).

Plaintiff Mutual Benefit is an insurance company incorporated under the laws of Pennsylvania with its principal place of business in Huntingdon, Pennsylvania. (ECF No. 1 ¶ 4.) Defendant Natale is a resident of Harford County, Maryland. (*Id.* ¶ 5.)

On May 25, 2019, Natale was driving down U.S. Route 52 in his 2015 CAN-AM All-Terrain Vehicle ("ATV"), returning from the Hatfield-McCoy off-road trails back to the Boar's Nest ATV Lodge in Matewan, West Virginia. (Natale Affidavit, ECF No. 22-1 ¶¶ 2, 4-5.) Natale obtained a permit from the lodge which authorized him to operate his ATV on the Hatfield-McCoy trails. (*Id.* ¶ 2.) West Virginia law also allows an individual to operate an ATV on or near the shoulder of any road, street, or highway "for a distance not to exceed ten miles to travel between a residence or lodging and off-road trails, fields and areas of operation, including stops for food . . . ." W. Va. Code. Code Ann. § 17F-1-1(b). The West Virginia Code provides that that operation of an ATV in that manner described "shall not constitute operation of a motor vehicle on a road or highway of [West Virginia] as contemplated by the provisions of section seven of this article." *Id.* § 17F-1-1(c). Section seven states that an ATV driver is not subject to the general rules of operation which govern the state's roads and is not required to obtain an operator's license. *See id.* § 17F-1-7; *State ex rel. Sergent v. Nibert*, 648 S.E.2d 26, 30 (W. Va. 2007).

At approximately 4:00 p.m. on May 25, 2019, Natale neared the intersection of U.S. 52 and Route 49 in Williamson, West Virginia when he was struck by a car driven by Eric Perkins. (*Id.* ¶¶ 4-6.) According to Natale, Perkins failed to yield the right of way when attempting to

3

turn from U.S. 52 onto Route 49. (*Id.*) Natale was thrown from his ATV and suffered serious and permanent injury. (*Id.* ¶ 7.)

At the time of the crash, Natale was insured under two personal automobile insurance policies. The first was a Personal Automobile Policy No. PP2005910 issued to Natale as the "named insured" (the "Natale Policy"). (*See* ECF No. 1-2.) The Natale Policy provided coverage for the policy period from January 28, 2019 to January 28, 2020. (*Id.*) The second policy was a Personal Automobile Policy No. PP01029789, issued to Natale's parents, Thomas and Dorothy Natale, which provided coverage to Natale as a resident of the named insureds' household (the "Family Policy"). (*See* ECF No. 17-1.) The Family Policy provided coverage for the policy period from October 25, 2018 to October 25, 2019. (*Id.*) Both policies were issued to Natale and his parents in Maryland and through a Maryland-based insurance broker. (ECF No. 1-2 at 3-6; ECF No. 17 at 2-6.)

The Natale Policy provided liability, medical payments/personal injury protection, and uninsured motorist coverage for two vehicles: a 2012 Dodge Ram and a 2006 Chevrolet Cobalt. (ECF No. 1-2 at 5.) The Family Policy provided the same types of coverage for five vehicles: a 2001 Honda Accord, a 2000 Chevrolet Silverado, a 2014 Chevrolet Silverado, a 2018 Hyundai Tuscon, and a 2018 Ford Transit. (ECF No. 17-1 at 5-6.) Natale's ATV was not included as an insured motor vehicle in either Policy.

Both the Natale Policy and the Family Policy were endorsed with identical Uninsured Motorist Coverage – Maryland forms ("UM Endorsement") and Personal Injury Protection Coverage – Maryland forms ("PIP Endorsement"). (ECF Nos. 1-2 at 7; 17-1 at 7.) The UM Endorsement provides coverage for "compensatory damages" the insured is entitled to

4

recover from the owner or operator of an "uninsured motor vehicle." (ECF No. 1-2 at 50.) "Uninsured" is defined to include underinsured motorists. (*Id.* at 24.) The PIP Endorsement provides $2,500 in coverage for bodily injuries an insured might sustain from a "motor vehicle," regardless of who was at-fault, or whether the other driver was insured. (*Id.* at 54.) Both of these endorsements contain an exclusion for injuries sustained by an insured while occupying or operating a motor vehicle owned by the insured but not insured under the applicable policy. The UM Endorsement states:

> **Exclusions**
>
> **A.** We do not provide Uninsured Motorist Coverage for "bodily injury" sustained:
>
> > **1.** By an "insured" while "occupying", or when struck by any motor vehicle owned by that "insured" which is not insured for this coverage under the policy. This includes a trailer of any type used with that vehicle.

(*Id.* at 51.) The PIP Endorsement similarly provides:

> **Exclusions**
>
> We will not provide Personal Injury Protection Coverage for "bodily injury" sustained by any "insured":
>
> > . . .
> >
> > **5.** Who is a named insured or "family member" while "occupying" any "motor vehicle" which is owned by that "insured" and for which personal injury protection benefits required by the Maryland Insurance Code are not provided.

(*Id.* at 55.) The UM endorsement does not specifically define "motor vehicle." However, the PIP Endorsement does define the term, stating that a motor vehicle is "an automobile and any other vehicle, including a trailer, operated or designed for operation upon a public road

5

by any power other than animal or muscular power." (*Id.* at 54.) The Maryland Insurance Code similarly defines "motor vehicle" as "a vehicle, including a trailer, that is operated or designed for operation on a public road by any power other than animal or muscular power." Md. Code Ann., Ins. § 19-501(b)(1).

On August 21, 2019, Natale submitted a claim to Mutual Benefit for uninsured motorist and personal-injury-protection coverage under the Natale Policy. (ECF No. 1 ¶ 23; ECF No. 11 ¶ 23.) He claimed that the individual responsible for the accident, Perkins, was underinsured.[2] (*Id.*) Mutual Benefit disclaimed coverage stating that the ATV involved in the accident was a "motor vehicle" owned by Natale, but not insured under the Policy. (ECF No. 1 ¶¶ 24-25; ECF No. 11 ¶¶ 24-25.) Mutual Benefit asserted that the claims related to the ATV accident fell within the Uninsured Motorist ("UM") and Personal Injury Protection ("PIP") Endorsements' "owned-but-not insured" exclusions. (*Id.*) On April 2, 2021, Natale submitted a claim under the Family Policy related to the same accident with his ATV. (ECF No. 17 ¶¶ 8(b), (d).) Mutual Benefit denied coverage on the same grounds as the Natale Policy. (*Id.*)

On September 10, 2020, Natale filed a complaint in Mingo County, West Virginia, seeking damages against Perkins and judgment against Mutual Benefit for benefits. (ECF No. 22 at 4.) Perkins' insurer offered to settled with Natale for the $25,000 limit on Perkins' policy. (ECF No. 17 ¶ 8(f).) Mutual Benefit consented to the proposed settlement, pursuant to Md. Code Ann., Ins. § 19-511, with respect to both the Natale and Family Policies. (*Id.* ¶ 8(g).) In doing so, Mutual Benefit reserved its right to deny coverage under both Policies. (*Id.*)

On January 21, 2021, Mutual Benefit filed this suit against Natale seeking declaratory

---

[2] Perkins had a motor vehicle insurance policy but with a per-person liability limit of only $25,000. (ECF No. 17 ¶ 8(e).)

judgment that the Natale Policy and the Family Policy do not provide coverage for Natale's claims because the motor vehicle involved in the accident was owned by Natale, but not insured the Policies, and the Policies exclude owned-but-not insured vehicles from coverage. (ECF No. 1 ¶ 3.) Specifically, Mutual Benefit seeks an order declaring that (1) the ATV involved in the West Virginia automobile accident was a "motor vehicle" under the terms of the UM and PIP Endorsements; (2) there is no coverage under the Policies for uninsured motorist benefits; (3) there is no coverage under the Policies for the personal injury protection benefits; and (4) Mutual Benefit has no duty or obligation to make payments to Natale for injuries he sustained in the West Virginia motor vehicle accident. (ECF No. 1 at 11; ECF No. ECF 17 ¶ 5.) On March 8, 2021, Defendant Natale filed an Answer and a Counterclaim against Mutual Benefit, seeking a declaratory judgment that he is indeed entitled to uninsured motorist and personal-injury-protection coverage under the Natale Policy. (ECF No. 11.)

On April 30, 2021, Mutual Benefit moved for Summary Judgment. (ECF No. 18.) On May 28, 2021, Natale filed a Cross Motion for Summary Judgment. (ECF No. 21.) Briefing on these motions has now been completed by the parties.

**STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the

7

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).

As noted above, if both parties have filed motions for summary judgment, then this Court "must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond*, 475 F.3d 633, 637-38 (4th Cir. 2007) (internal quotation marks omitted). Regardless, this Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656-60 (2014) (per curiam).

In the specific context of a "claim for breach of an insurance policy, 'the insured bears the burden of proving every fact essential to his or her right to recovery, ordinarily by a preponderance of the evidence.'" *See Jowite Ltd. P'ship v. Federal Ins. Co.*, No. DLB-18-2413, 2020 WL 4748544, at *5 (D. Md. Aug. 17, 2020) (quoting *Gen. Ins. Co. v. Walter E. Campbell*

8

*Co.*, 214 F. Supp. 3d 578, 597 (D. Md. 2017) (citing *N. Am. Acc. Ins. Co. v. Plummer*, 176 A. 466, 469 (Md. 1935), *aff'd sub nom. Gen Ins. Co. v. United States Fire Ins. Co.*, 886 F.3d 346 (4th Cir. 2018), as amended (Mar. 28, 2018))). "If the insured meets its burden and the 'insurer [has] relie[d] upon a policy exclusion to deny coverage, the insurer bears the burden of proving that the exclusion applies.'" *Id.* (quoting *Ellicott City Cable, LLC v. Axis Ins. Co.*, 196 F. Supp. 3d 577, 584 (D. Md. 2016) (citing *Finci v. Am. Cas. Co.*, 593 A.2d 1069, 1087 (Md. 1991))).

## ANALYSIS

Mutual Benefit filed this suit against Natale seeking declaratory judgment that the Natale Policy and the Family Policy do not provide coverage for Natale's claims because the ATV involved in the accident was owned by Natale, but not insured under the Policies, and both the Uninsured Motorist ("UM") and Personal Injury Protection ("PIP") Endorsements of the two Policies exclude owned-but-not insured vehicles from coverage. (ECF No. 1 ¶ 3.) The parties do not dispute that Natale owned the ATV. They do not dispute that the driver that struck Natale was underinsured. The only remaining dispute in this case is whether Natale's ATV should be considered a "motor vehicle" owned by Natale but not insured under the Policies.

As the basis of this Court's jurisdiction lies in diversity of citizenship, under 28 U.S.C. § 1332(a), Maryland law applies. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Under Maryland law, courts follow the general rules of contract construction in the interpretation of an insurance contract. *See Cheney v. Bell Nat'l Life Ins. Co.*, 556 A.2d 1135, 1138 (Md. 1998); *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985). Maryland generally

9

adheres to the rule of *lex loci contractus*, under which the construction of a contract is determined by the law of the state where the contract was made. *See Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992). "Maryland's appellate courts view the *locus contractus* of an insurance policy as the state in which the policy is delivered and where the premiums are paid, because such acts are the last acts necessary to make an insurance policy binding." *Nautilus Ins. Co. v. REMAC America, Inc.*, 956 F. Supp. 2d 674, 684 (D. Md. 2013) (citing A*etna Cas. & Sur. Co. v. Souras*, 552 A.2d 908 (Md. Ct. Spec. App. 1989) and *TIG Ins. Co. v. Monongahela Power Co.*, 58 A.3d 497 (Md. Ct. Spec. App. 2012)). In this case, both the Natale Policy and Family Policy were issued to Natale and his parents in Maryland and through a Maryland-based insurance broker. (ECF No. 1-2 at 3-6; ECF No. 17 at 2-6.) Therefore, Maryland law applies.[3]

With respect to the interpretation of insurance policies, "Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer." *See Cheney*, 556 A.2d at 1138. As such, principles of contract law govern the automobile insurance policies at issue, and the rights and obligations of the parties are determined by the terms of those contracts. *Columbia Town Ctr. Title Co. v. 100 Inv. Ltd. P'ship.*, 36 A.3d 985, 1005 (Md. Ct. Spec. App. 2012). "[I]f no ambiguity in the terms of the insurance contract exists, a court has no alternative but to enforce those terms." *Dutta v. State Farm Ins.*

---

[3] Natale does not contest that the insurance policies at issue were made in Maryland. Instead, he contends that West Virginia law should apply in this case, citing the Maryland Court of Appeals' decision in *Erie Ins. Exchange v. Hefferan*, in which the Court of Appeals held that in uninsured motorist cases, "the substantive law of the place where the accident occurred applies, generally, to the issues of fault and damages." 925 A.2d 636, 649 (Md. 2007). However, the Court of Appeals explicitly stated that it was not, in that case, "asked to interpret the validity of a contractual term or decide questions of coverage." *Id.* at 648. Instead, "the nature of problem" before the Court "relate[d] to tort." *Id.* The question before the Court in this case is one of coverage, and the traditional *lex loci contractus* rule clearly applies. Natale's additional arguments as to the application of West Virginia law are discussed *infra*.

*Co.*, 769 A.2d 948, 957 (Md. 2001) (citing *Kendall v. Nationwide Ins. Co.*, 702 A.2d 767, 773 (Md. 1997)).

When interpreting an insurance policy's terms, this Court is instructed to interpret such policy "as a whole, according words their usual, everyday sense, giving force to the intent of the parties, preventing absurd results, and effectuating clear language." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 495 (4th Cir. 1998). The test for that "usual, everyday sense," is "what meaning a reasonably prudent layperson would attach to the term." *See Pacific Indem.*, 488 A.2d at 488. Words in a contract are only considered ambiguous if "they reasonably can be understood to have more than one meaning." *Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 963 A.2d 253, 260 (Md. Ct. Spec. App. 2009) (internal citation omitted).

As detailed above, the identical UM and PIP Endorsements of the Natale Policy and the Family Policy clearly contain exclusions for owned-but-not-insured motor vehicles. The UM Endorsement specifically provides:

> **Exclusions**
>
> **A.** We do not provide Uninsured Motorist Coverage for "bodily injury" sustained:
>
> > 1. By an "insured" while "occupying", or when struck by any motor vehicle owned by that "insured" which is not insured for this coverage under the policy. This includes a trailer of any type used with that vehicle.

(ECF No. 1-2 at 51.) The PIP Endorsement similarly provides:

> **Exclusions**
>
> We will not provide Personal Injury Protection Coverage for "bodily injury" sustained by any "insured":
>
> . . .

11

> 5. Who is a named insured or "family member" while "occupying" any "motor vehicle" which is owned by that "insured" and for which personal injury protection benefits required by the Maryland Insurance Code are not provided.

(*Id.* at 55.) As also detailed above, the UM Endorsement does not define the term "motor vehicle," but the PIP Endorsement does. The PIP Endorsement defines motor vehicle as "an automobile and any other vehicle, including a trailer, operated or designed for operation upon a public road by any power other than animal or muscular power." (*Id.* at 54.) This definition of "motor vehicle" is the same as provided under the Insurance Article of the Maryland Code. *See* Md. Code Ann., Ins. § 19-501(b)(1).

Under the plain language of the "motor vehicle" definition as provided by the PIP Endorsement and Maryland law, Natale's ATV clearly qualifies as a "motor vehicle." There is no dispute that Natale was driving the ATV on U.S. Route 52, a public road, at the time of the crash. And there is no dispute that the ATV was not powered by an animal or muscular power. Further, the Transportation Article of the Maryland Code specifically defines an ATV as a "motor vehicle." *See* Md. Code Ann., Transp. § 11-103.3 ("'All-terrain vehicle' means a motor vehicle that . . . .").

Natale's arguments that his ATV should not qualify as a motor vehicle are without merit. First, Natale points to the Maryland Court of Appeals' decision in *Crespo v. Topi*, in which the Court addressed the question of whether a moped was a motor vehicle within the meaning of an insurance policy's uninsured motorist coverage. 840 A.2d 156 (Md. 2003). Defendant Natale does note that the Court of Appeals looked beyond the statutory definitions of "motor vehicle" and "moped," considering the statutory scheme as a whole. *Id.* at 160.

The Court of Appeals noted that Maryland law did not require that a moped be registered, nor that a moped owner secure certain minimum insurance coverage like owners of automobiles. *Id.* at 160-61. Ultimately, the Court held that a moped was not a motor vehicle for purposes of determining uninsured motorist coverage. *Id.* at 161.

However, it is important to note that in *Crespo* the definitions of "moped" and "motor vehicle" provided by Maryland law were in conflict. *Id.* at 160. The Insurance Article defined "motor vehicles" as those "operated or designed for operation on a public road by any power other than animal or muscular power," *id.* at 160 (citing Md. Code Ann., Ins. § 19-501(b)(1)), and the Court of Appeals noted that such definition could be "broad enough to include a 'moped,'" *id.* Nevertheless, the Maryland Transportation Article expressly exempted mopeds, motor scooters, electric bikes, and electric scooters from the definition of "motor vehicle." *Id.* (citing Md. Code Ann., Transp. § 11-135(b)). Due to this conflict between the different provisions of Maryland law, the Court of Appeals turned to the statutory scheme to resolve the question at hand.

In this case, there is no such conflict. ATVs fit within the broad definition provided by the Insurance Article, as well as the PIP Endorsement, and significantly the Transportation Article specifically refers to ATVs as "motor vehicles." As the Court of Appeals has held, "[i]n a nutshell, the Transportation Article focuses on the owners and drivers of motor vehicles; the Insurance Article focuses on insurance companies and their insureds. The two parts of the Code obviously need to be read together, in harmony." *Maryland Auto. Ins. Fund v. Perry*, 741 A.2d 1114, 1115 (Md. 1999). As a matter of law, an ATV is a motor vehicle within the meaning of Maryland law, and by extension, within the meaning of the identical PIP

13

Endorsement definition.

Alternatively, Natale contends that his ATV was not being "operated . . . on a public road" within the meaning of "motor vehicle" as provided by the PIP Endorsement and Maryland Insurance Article and, therefore, that it fails to come within the scope of the owned-but-not-insured exclusion. (ECF No. 22 at 10.) Natale seeks to apply West Virginia law, contending that under West Virginia Code § 17F-1-1(b) he was permitted to operate his ATV on a public road "for a distance not to exceed ten miles to travel between a residence or lodging and off-road trails, fields and areas of operation, including stops for food, fuel, supplies and restrooms." In subsection (c) of this same portion of the West Virginia Code, the statute states that operating an ATV "in accordance with subsection (b) *shall not constitute operation of a motor vehicle on a road or highway of this state* as contemplated by the provisions of section seven of this article." *Id.* § 17F-1-1(c) (emphasis added).

In seeking to apply West Virginia law, Natale places great emphasis upon the opinion of the Court of Appeals of Maryland in *Erie Insurance Company v. Hefferan*, 925 A.2d 636 (Md. 2007). In that case, the Maryland court noted that principles of *lex loci contractus* (where the contract was made) apply to questions of coverage. Natale then argues that principles of *lex loci delicti* (where the accident took place) apply to liability.[4] The *Heffernan* case, does not support Natale's efforts to apply West Virginia law. The Court of Appeals of Maryland specifically noted in that case that it was "not asked to . . . decide questions of coverage." 925 A.2d at 648. The question before it was to "resolve the issues of tort liability." *Id.* There is

---

[4] Counsel for Mutual Benefit has referred to this issue as one of "dépeçage." (ECF No. 23 at 6.) This is a concept whereby different issues within a case are governed by different jurisdictions.

14

no issue in this case with respect to the liability for the accident of May 25, 2019 in West Virginia. The issue presented in this case is purely a question of insurance coverage.

Furthermore, even if West Virginia law did apply to the case at hand, the Defendant ignores the phrase "as contemplated by the provisions of section seven of this article." Section seven states that an ATV driver is not subject to the general rules of operation which govern the state's roads and is not required to obtain an operator's license. *See id.* § 17F-1-7; *State ex rel. Sergent v. Nibert*, 648 S.E.2d 26, 30 (W. Va. 2007). To the extent Natale was operating his ATV in compliance with subsection (b), subsection (c) simply says that he was not required to follow general rules of operation such as § 17F-1-1(a)(2), which specifically bans use of ATVs on a road or highway with a center line or more than two lanes of traffic. *See* Md. Code Ann., Ins. § 17F-1-1(a)-(c).

Quite simply, Natale was operating an ATV on a public road on May 25, 2019 when he was struck by an automobile. That ATV was not insured under the policies with Mutual Benefit. The Natale and Family Policies each contained provisions which excluded from coverage claims related to motor vehicles owned by Natale but not insured under the Policies. There is no genuine dispute of material fact at issue in this case. Under the plain language of the PIP Endorsement included in both policies, as well as the Insurance Article of the Maryland Code, this Court holds that Natale's ATV was a motor vehicle. Natale is not entitled to coverage under either of the Policies for injuries sustained in the May 25, 2019 crash in West Virginia.

**CONCLUSION**

For the foregoing reasons, the Plaintiff Mutual Benefit's Motion for Summary

Judgment (ECF No. 18) is GRANTED. The Defendant Natale's Cross Motion for Summary Judgment (ECF No. 21) is DENIED. Further, Defendant Natale's Counterclaim for Declaratory Judgment (ECF No. 11) is DISMISSED WITH PREJUDICE. As a matter of law, Natale's ATV was not insured under either of the Mutual Benefit policies in question. His claims are excluded by the "owned-but-not-insured" exclusion in both policies.

    A separate Order follows.

Dated: July 1, 2021

_____/s/_____

Richard D. Bennett
United States District Judge